**Kenneth J. THOMAS, Plaintiff,**

v.

**iSTAR FINANCIAL, INC. and Ed Baron, Defendants.**

**No. 05 CIV. 606(VM).**

United States District Court, S.D. New York.

Oct. 4, 2007.

David T. Azrin, Gallet Dreyer & Berkey, LLP, New York, NY, for Plaintiff.

Alan Jonathan Trafimow, David O. Simon, Steven M. Latino, Barry A. Guryan, Robyn Kim Ruderman, Epstein, Becker & Green, P.C., New York, NY, for Defendants.

## *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

## I. *BACKGROUND*

By Decision and Order dated July 7, 2007 (the "Order")[1], the Court granted the motion of defendants iStar Financial, Inc. ("iStar") and Ed Baron (collectively, "Defendants") for a new trial pursuant to Federal Rule of Civil Procedure 59(a) unless plaintiff Kenneth J. Thomas ("Thomas") elects to remit by the amounts set forth in the Order the front pay and punitive damages that were awarded to Thomas by the jury following the trial of this action. The Court determined that those awards were excessive under applicable standards and directed entry of a Preliminary Judgment on July 11, 2007 indicating the amounts of remittitur the Court deemed appropriate.

Thomas now moves for an order pursuant to Local Civil Rule 6.3 granting reconsideration, as well as for certification for interlocutory appeal. By separate motion, Thomas seeks an award of attorney's fees and costs. Defendants filed opposition to Thomas's motions. Thomas's submission in support of the instant motion reiterates essentially the same issues and arguments the Court considered in ruling upon the underlying matter, and raises points that this Court fully weighed and found meritless. The Court also finds insufficient grounds for an interlocutory appeal and

---

1. The Order is reported as *Thomas v. iStar,* 508 F.Supp.2d 252 (S.D.N.Y.2007).

deems the motion for attorney's fee and costs premature.

## II.  STANDARD OF REVIEW

Reconsideration of a previous order by the court "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (citations and quotation omitted). "The provision for reargument is not designed to allow wasteful repetition of arguments already briefed, considered and decided." *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 790). To these ends, a request for reconsideration under Local Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and "that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

Local Rule 6.3 "is intended to 'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.'" *S.E.C. v. Ashbury Capital Partners,* No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting *Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988)). A court must narrowly construe and strictly apply Local Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent the rule from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment. *See Montanile v. Nat'l Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y.2002); *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y.1999).

## III.  DISCUSSION

### A.  RECONSIDERATION

Thomas urges reconsideration on the basis of the same arguments that were raised during the Court's July 20, 2007 post-trial conference with the parties, and that are sufficiently addressed in the considerations embodied in the Order. The motion at hand cites no controlling law or factual matters the Court overlooked that might reasonably be expected to alter the outcome of the Order. Rather, Thomas merely couches his disagreement with the Court's decision as statements of facts and legal standards the Court allegedly overlooked. The Court in fact took into account and rejected the various considerations pertaining to the purposes of punitive damages stressed by Thomas. While seen from his perspective, Thomas understandably may have a much larger view of the reprehensibility of iStar's conduct and the importance of deterring similar acts than that reflected in the Court's decision, a party's difference of opinion with the outcome of a ruling does not equate to sufficient grounds for a finding that the Court ignored controlling facts or law.

More specifically, Thomas asserts that the Court employed the improper standard in its review of the jury's punitive damages award, by misapplying the constitutional principles concerning the ratio of punitive to compensatory damages, by incorrectly relying upon the statutory cap in federal cases under Title VII of the Civil Rights

Act of 1964, as well as by referring to punitive damages awards in other cases. Again, these contentions reflect issues as to which Thomas does not identify controlling principles the Court overlooked that would alter the outcome. Instead, he takes issue with the Court's reading and application of the principles the Court found most compelling. The proper vehicle to challenge such a ruling is not a motion for reconsideration, but an appeal from a final judgment.

Insofar as Thomas argues that the correct standard the Court should have applied in its review of the punitive damages award is whether the amount of the verdict shocks the judicial conscience, perhaps a more careful reading of the various measures the Court employed as a whole by which to assess the justification and reasonableness of the award and thus inform its judgment should suffice to express the Court's ultimate conclusion that a recovery of punitive damages of $1.6 million, under the totality of the circumstances on the record of this case, would unsupportably and unfairly exceed what iStar's wrongful conduct warranted. This assessment is reinforced by the vast disparity of the punitive award not only as against the compensatory damages—a ratio of 8.4 to 1—but also in relation to the minimal recovery of only $3,500 that the jury granted for Thomas's emotional injuries, a figure which the Court reads as reflecting the jury's ultimate judgment that whatever the level of reprehensibility iStar's action embodied, it did not cause Thomas significant injury. Ordinarily, the extent of pain, suffering and emotional distress inflicted by wrongdoing is one fair measure of the degree of blameworthiness that particular misbehavior entails. Thus, "aggravating factors" such as violence or threat of violence, malice and deceit and repeated instances of misconduct rise in the scale of reprehensibility because they

are likely to wreak more personal and public injury. *See Ortiz–Del Valle v. N.B.A.,* 42 F.Supp.2d 334, 345 (S.D.N.Y. 1999) (citing *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir.1996)). Insofar as this observation holds true, a penalty of $1.6 million imposed as punishment for the relatively slight injury is exorbitantly disproportionate to the personal harm committed, and may suggest that the jury did not deem the wrongful conduct as reprehensible as Thomas perceives it to be. In any event, the award so grossly and inexplicably exceeds both the economic and emotional harm the jury found that the discrepancy raises serious concern that sheer passion, guesswork, or other impermissible motives imbued this aspect of the verdict.

■ As a whole, these somewhat quantitative measures—the ratio of punitive and compensatory damages, the correlation between the amount of punishment and the extent of personal harm inflicted, the similarity of an award to others held reasonable for sufficiently comparable circumstances, the limits statutorily prescribed to govern certain cases, the extent of evidentiary support for a penalty—combine to inform a judgment as to when an award is so excessive as to "shock the judicial conscience." But that term as such is not a measured or reasoned response, or an end in itself, as Thomas's argument suggests. Rather, it reflects but a somewhat qualitative judicial reaction, an ultimate conclusion engendered by any quantifiable gross disparity that results from applying the various relevant criteria to evaluate a punitive award. Nonetheless, if in articulating its reasons and conclusion the Court did not explicitly invoke the term "shocks the judicial conscience" to manifest this reaction, its judgment meant to convey that determination, and at least implicitly does so. Insofar as there may be any ambiguity on this point,

the Court here expressly reaffirms its finding that the jury's punitive damages award in this action shocks the Court's conscience.[2] Similarly, Thomas argues that with regard to the Court's decision relating to the front pay award, the correct standard the Court should have applied was the "shock the conscience" test rather than a "deviates materially" rule. In this respect as well, Thomas misreads the thrust and substance of the Court's decision. As the Court stressed in the Order, the central point that it found troubling was that to the extent the jury's verdict assumed that Thomas would have remained employed at iStar for at least seven years more, despite the longstanding and serious questions regarding the quality of his job performance and other circumstances raised on the record, the evidence did not support a rational jury finding to that effect. *See Thomas,* 2007 WL 2701270, at *6. If not expressly stated, the Court reaffirms that a jury award that is unsupported by the record or goes clearly against the weight of the evidence may be improperly grounded on speculation or sheer guesswork, and thus constitutes a denial of justice. To that degree the verdict shocks the conscience and warrants a new trial. *See Slade v. Whitco Corp.,* 811 F.Supp. 71, 75 (N.D.N.Y., 1993) (citing *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir. 1990)).

Because Thomas has failed to identify any controlling law or factual matters that the Court demonstrably did not consider and that would have altered the outcome embodied in the Order, Thomas's motion for reconsideration is DENIED.

## B. *INTERLOCUTORY APPEAL*

■ Thomas's application for a certification for an interlocutory appeal pursuant to 28 U.S.C. § 1292 (" § 1292") is unwarranted. On the record before it, the Court finds no basis under applicable standards pursuant to § 1292 to support a finding of "controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

■ To be "controlling," a question of law would compel termination of the litigation if on appeal the Court's ruling were reversed on that ground. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave,* 921 F.2d 21, 24 (2d Cir.1990). The legal issues Thomas raises in support of his motion would result not in an end to this action, but essentially in an elaboration of the basis for the Court's reduction of the punitive damages and front pay awards, or in a recomputation of the amounts of the awards in the light of other considerations. Moreover, as regards to the test of "substantial ground for difference of opinion" raised by the legal issues Thomas references, a bare claim that the Court's ruling was incorrect is not sufficient to satisfy the standard. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,* 426 F.Supp.2d 125, 129 (S.D.N.Y.2005). Thomas cites to no specif-

---

2. Thomas points to several instances in the decision in which the Court makes reference to the task of determining whether a punitive award is "appropriate" or "sufficient" as also indicating that the Court employed the incorrect standard. This argument misconstrues the ruling. In context, the use of those terms denotes not the Court's own notion of what the punitive damages should have been in this case, but the amount of an award that may be warranted as reasonable and justifiable under applicable standards. Properly read, the Court's decision indicates that the product of such an assessment of an appropriate award emerges from the proper application of pertinent doctrine to the circumstances the trial evidence support.

ic instant of conflicting authority on the legal issues he raises, or matters of unique difficulty or of first impression. *See Morris v. Flaig*, 511 F.Supp.2d 282, 312 (E.D.N.Y.2007).

Finally, certification for an interlocutory appeal in connection with an order granting a new trial absent remittitur of punitive damages would be inappropriate. *See Ortiz–Del Valle v. N.B.A.*, 190 F.3d 598, 600 (2d Cir.1999); *see also Morris*, 511 F.Supp.2d at 313.

## C.  *ATTORNEY'S FEES*

The Court denies Thomas's application for an award of attorney's fees.  At this time, such a request is premature.

## D.  *NEW TRIAL*

Thomas asks for clarification concerning the amount of punitive damages award the Court regards as the limit constitutionally permissible in this case, as well as to the scope of a new trial.  The Court's Order and Preliminary Judgment provide quite specific guidance with regard to the amounts of punitive damages and front pay the Court deems legally permissible under the evidentiary record and applicable standards.  Any further elaboration seems unnecessary and may border on rendering an advisory opinion.  It was the Court's contemplation that a new trial would be limited to the issues of front pay and punitive damages.  In this regard, it should be noted that the Court has already determined that under the totality of the circumstances presented at trial a punitive award exceeding by a ratio of greater than one to one the amount of compensatory damages the jury found, would be excessive.  That determination would effectively circumscribe the outer bounds of recovery in any new trial of punitive damages.

## IV.  *ORDER*

For the reasons stated above, it is hereby ORDERED that motion of plaintiff Kenneth J. Thomas ("Thomas") for reconsideration (Docket No. 80) of the Court's Preliminary Judgment and Order dated July 11, 2007, and for certification of an interlocutory appeal, is DENIED; and it is

**ORDERED** that Thomas's motion (Docket No. 82) for an award of attorney's fees and costs is denied without prejudice; and it is finally

**ORDERED** that the new trial of this action in respect of the issue of front pay and punitive damages is scheduled to commence on April 7, 2008, unless within seven calendar days of the date of this Order, Thomas elects to remit the jury awards in accordance with the Court's Order dated July 7, 2007.

*SO ORDERED.*