07-5327-cv (L)
Thomas v. iStar Financial, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————

August Term, 2008

(Argued: February 24, 2009                 Decided: December 17, 2010)

Docket No. 07-5327-cv (L), 07-5510-cv (XAP)

———————————

KENNETH J. THOMAS,

*Plaintiff-Appellant-Cross-Appellee*,

— v.—

iSTAR FINANCIAL, INC., a Maryland corporation and ED BARON,

*Defendants-Appellees-Cross-Appellant*.

———————————

B e f o r e :

HALL and LIVINGSTON, *Circuit Judges*, and BIANCO, *District Judge*.[*]

———————————

Kenneth J. Thomas appeals from orders of the United States District Court for the

Southern District of New York (Marrero, *J.*), *inter alia*: granting his and defendants iStar

Financial, Inc. and Ed Baron's post-trial joint submission to reduce the amount of punitive

damages awarded him by the jury; and correcting a clerical error regarding the calculation of

---

[*] The Honorable Joseph F. Bianco, of the United States District Court for the Eastern
District of New York, sitting by designation.

prejudgment interest. We hold that Thomas is barred from contesting the remittitur of punitive damages to which he voluntarily agreed. Additionally, we hold that the district court lacked jurisdiction to correct its clerical mistake without first obtaining leave from this Court to do so, but we now grant that leave *nunc pro tunc*. Because the remaining issues raised in both parties' appeals are without merit, we **AFFIRM** the district court's judgment in its entirety.

AFFIRMED.

———————————

DAVID T. AZRIN (David S. Douglas and Michelle P. Quinn *on the brief*), Gallet Dreyer & Berkey LLP, New York, NY, *for Plaintiff-Appellant-Cross-Appellee*.

BARRY A. GURYAN (A. Jonathan Trafimow, *on the brief*), Epstein Becker & Green, P.C., New York, NY, *for Defendants-Appellees-Cross-Appellant*.

———————————

*Per Curiam*:

In August 2003, iStar Financial, Inc. ("iStar") fired Kenneth Thomas. A year and a half later, Thomas sued iStar and one of his supervisors there, Ed Baron, (collectively "defendants") for various violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and parallel provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* After a trial in the United States District Court for the Southern District of New York (Marrero, *J.*), a jury found that Thomas's termination was in retaliation for complaints he had made about Baron, and it awarded compensatory and punitive damages. Both sides now appeal numerous issues related to pre-trial, trial, and post-trial proceedings.

Thomas appeals from orders, *inter alia*: granting his and defendants' post-trial joint submission to reduce the amount of punitive damages awarded him by the jury and correcting a clerical error in the calculation of prejudgment interest. We hold that Thomas is barred from contesting the remittitur of punitive damages, to which he voluntarily agreed. Additionally, we hold that the district court lacked jurisdiction to correct its clerical mistake without first obtaining leave from this Court to do so, but we now grant that leave *nunc pro tunc*. Because the remainder of Thomas's and defendants' appeals are without merit, we **AFFIRM** the district court's judgment in its entirety.

## I. Background

In his complaint, Thomas asserted that defendants fired him both because he is African-American and in retaliation for complaints he made about racist treatment at iStar. He also claimed that, while he was employed, defendants created a hostile work environment. The district court granted summary judgment against Thomas on the hostile work environment claim but allowed his discriminatory termination and retaliation claims to go to trial. *Thomas v. iStar Fin., Inc.* ("*Thomas I*"), 438 F. Supp. 2d 348, 368-69 (S.D.N.Y. 2006). A jury subsequently found that defendants were not motivated by racial animus when they fired Thomas, but that they did act in retaliation for previous complaints Thomas had lodged about Baron. It awarded him compensatory damages in the form of front-pay, back-pay, and non-economic pain and suffering damages. The jury also assessed punitive damages against iStar in the amount of $1.6 million dollars. Post-trial, the district court determined that the punitive damage award was unconstitutionally excessive, *Thomas v. iStar Fin., Inc.* ("*Thomas II*"), 508 F. Supp. 2d 252, 262-

64 (S.D.N.Y. 2007), and Thomas agreed in the form of a joint submission to a remit those damages, *Thomas v. iStar Fin., Inc.* ("*Thomas III*"), 520 F. Supp. 2d 483 (S.D.N.Y. 2007).

The district court also decided to award Thomas prejudgement interest on his back-pay damages. *Thomas II*, 508 F. Supp. 2d at 264. Although Thomas argued that the New York statutory interest rate should be applied to calculate that award, the court determined the interest should be calculated using the applicable rate under federal law. *Id.* In a subsequent order related to Thomas's remittitur of punitive damages, however, the district court erroneously directed the Clerk of Court to calculate Thomas's prejudgment interest using the New York rate. Order Granting Joint Submission for Reduction of Punitive Damages, Nov. 21, 2007, Dkt. No. 89. When the district court realized its mistake, it issued a corrected order directing the Clerk of the Court to rescind the earlier judgment and to calculate the prejudgment interest using the federal rate, as set forth in *Thomas II*. Order Correcting Calculation of Prejudgment Interest, Dec. 7, 2007, Dkt. No. 96. By the time the district court took this action, however, Thomas had already filed a notice of appeal. Notice of Appeal, Nov. 28, 2007, Dkt. No. 92.

## II.  Discussion

### Remittitur of Punitive Damages

On September 7, 2007, the district court conditionally granted defendants' motion for a new trial under Fed R. Civ. P. 59(a) on the issue of punitive damages because it determined that the jury's punitive damage award was unconstitutional.[1] *Thomas II*, 508 F. Supp. 2d at 264-265. It ordered that a new trial on punitive damages would be scheduled unless Thomas agreed to

---

[1] The district court also granted the defendants' Rule 59(a) motion with respect to damages for "front-pay." *Thomas II*, 508 F. Supp. 2d 264-65. Thomas does not contest this aspect of the court's ruling.

4

remit his punitive damage award from $1.6 million to $190,000—the maximum amount that the court found consistent with the Fifth Amendment's Due Process requirement. *Id.* After unsuccessfully moving for reconsideration of the Rule 59 motion, *see Thomas v. iStar Fin., Inc.*, 520 F. Supp. 2d 478, 479 (S.D.N.Y. 2007), Thomas and the defendants filed a joint submission asking the district court to reduce, "as a matter of law," his punitive damage award from $1.6 million to $190,000 without option for a new trial. *Thomas III*, 520 F. Supp. 2d at 485. The district court granted the relief requested in the joint submission, and Thomas now appeals the district court's "decision after trial to vacate the jury's punitive damage award." (Plaintiff-Appellant-Cross-Appellee's Br. 39.)

In *Thomas II*, the district court offered Thomas a remittitur. Thomas could have a new trial on the issue of punitive damages, taking his chances with a new jury's determination, or he could voluntarily remit his damages, reducing them to a known amount. It is settled law that "a plaintiff in federal court, whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted." *Donovan v. Penn Shipping Co., Inc.*, 429 U.S. 648, 650 (1977); *see also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2815 ("[I]t is now clear that a plaintiff may not appeal the propriety of a remittitur to which he agreed, whether under protest or not.").

The joint submission yielding the order in *Thomas III* appears to have been an effort to evade the rule banning appeals of accepted remittiturs. There is no real distinction, however, between a plaintiff who accepts a remittitur rather than face the uncertain outcome of an appeal, and possibly a new trial, and one who petitions the district court to order an identical reduction in damages without the possibility of a new trial. Moreover, there remains the fact that Thomas

5

himself moved for the reduction of his punitive damage award. He cannot now appeal the district court's decision to grant that motion.

Because Thomas may not now appeal the district court's order in *Thomas III*, he has no mechanism by which to challenge the district court's constitutional analysis related to punitive damages in *Thomas II*. As such, we deny the appeal without deciding whether the jury's original punitive damage award of $1.6 million was constitutionally excessive.

**Prejudgment Interest**

Thomas also claims that the district court should have ordered prejudgment interest on his compensatory damages to be calculated based on the New York state interest rate rather than the lower federal interest rate. For support he cites *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998), for the proposition that "federal law does not apply to the calculation of prejudgment interest on supplemental state law claims."

This argument is without merit. Whereas *Marfia* concerned damages on state law claims alone (the jury having found for the defendant on all federal claims), *id.* at 85, Thomas received an award of damages that compensated for both federal and state claims without distinguishing between the two. As the district court stated, and we now hold, judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate. *See Thomas II*, 508 F. Supp. 2d at 264. In so holding, we adopt the persuasive practice of a number of district courts in this Circuit that have previously considered the issue. *See Kuper v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 1190, 2003 WL 23350111, at *3-*5 (S.D.N.Y. Dec. 18, 2003) (citing cases), *adopted by* 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004); *see also Press v. Concord Mortg. Corp.*, No. 08 Civ. 9497, 2009 WL

6

6758998, at *9 (S.D.N.Y. Dec. 7, 2009); *Kinneary v. City of N.Y.*, 536 F. Supp. 2d 326, 334 (S.D.N.Y. 2008), *rev'd on other grounds by* 601 F.3d 151 (2d Cir. 2010); *cf. Genao v. Blessed Sacrament Sch.*, No. 07 CV 3979, 2009 WL 3171951, at *10 & n.21 (E.D.N.Y. Oct. 1, 2009) (stating that "where liability exists under both the [Fair Labor Standards Act] and New York Labor Law, it is more appropriate to [use] the federal interest rate" for prejudgment interest, but noting that at least two district courts have used the state interest rate in FLSA cases).[2]

Thomas argues that even if the federal rate should have applied, the district court was without jurisdiction to impose that rate by corrected order in December 2007 because an appeal from the case had already been docketed. Thomas is correct in this respect. Federal Rule of Civil Procedure 60(a) does in fact require a district court to seek leave from this Court for the correction of a clerical mistake where an appeal is already pending. Thus, unless we grant permission for the district court to correct its mistake, the December order is without effect. *Cooper v. Coregis Ins. Org.*, No. 96-9250, 1997 WL 589907 at *2 (2d Cir. Sept. 23, 1997) (unpublished opinion); *see also Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990); *Leonhard v. United States*, 633 F.2d 599, 609-10 (2d Cir. 1980). That said,

---

[2] The cases cited in *Genao* that applied the New York prejudgment interest rate rather than the federal rate are distinguishable. Both involved the calculation of prejudgement interest for damages under the FLSA and New York Labor Law where the plaintiff received liquidated damages in addition to lost wages. *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *1 (S.D.N.Y. May 8, 2007); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005). Because the FLSA does not allow for any prejudgment interest where plaintiffs also receive liquidated damages, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988), these courts awarded prejudgment interest solely on the basis of the New York Labor Law. *Heng Chan*, 2007 WL 1373118, at *9; *Doo Nam Yang*, 427 F. Supp. 2d at 342. In other words, these cases are more in line with *Marfia* than with any of those cited above. They stand for the proposition that where prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.

however, we now grant the district court leave to correct its clerical mistake *nunc pro tunc*.[3]

*Cooper*, 1997 WL 589907, at *2.

**Parties' Other Claims**

In addition to the claims already addressed, the parties raise a variety of other claims, which require only brief discussion. Thomas asserts that the district court erred by: (1) deciding his hostile work environment claim on summary judgment; and (2) directing a verdict against him on the issue of certain consequential damages. The defendants claim the court improperly: (1) refused them summary judgment or judgment as a matter of law on Thomas's retaliation claim; (2) allowed the issue of punitive damages to reach the jury; (3) admitted certain testimonial evidence, including that from Thomas's expert witness; and (4) allowed the jury to determine Thomas's lost wages rather than determining the issue itself.

With respect to Thomas's claims, the district court did not err. It correctly granted summary judgment on his hostile work environment claim because no reasonable jury could have found the "occasional and isolated" events Thomas complained of, *Thomas I*, 438 F. Supp. 2d at 363, were severe or pervasive enough to create an abusive work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Likewise, evidence that Thomas had asked for an advance on his bonus some eight months before he was fired was an insufficient basis for a reasonable jury to find that damages related to Thomas's inability to close on a house were

---

[3] There can be no question that the error was genuinely clerical. The district court's order directing application of the New York rate came more than two months after it expressly determined that the federal rate should apply. *Compare Thomas II*, 508 F. Supp. 2d at 264, *with* Order Granting Joint Submission for Reduction of Punitive Damages, Nov. 21, 2007, Dkt. No. 89.

reasonably foreseeable to the defendants. *See Hadley v. Baxendale*, 9 Exch 341, 156 ER 145 (Eng. 1854).

Defendants' claims on appeal are also without merit. As the district court noted in its denial of summary judgment on the retaliation claim, Thomas offered evidence from which a jury could infer that Baron harbored a retaliatory animus and was involved in the company's decision to fire Thomas. *Thomas I*, 438 F. Supp. 2d at 366-67. Similarly, the record reveals sufficient evidence for a jury find that iStar was reckless—and thus susceptible to punitive damages—by allowing Baron to participate in the decision to terminate Thomas when senior officials at the company knew the two men did not get along. It is also clear that the district court did not abuse its discretion with respect to the testimony it allowed—expert, *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), or otherwise, *see Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997). Finally, while defendants are correct that lost wages under Title VII are equitable and, therefore, need not be tried by a jury,[4] *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 157-58 (2d Cir. 2001), economic damages under the statute may nevertheless be tried by a jury if both sides consent. *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 295-96 (S.D.N.Y. 2008) (Lynch, *J.*). Such consent may be express or implied. *Id.* at 296 ("[D]efendant's silence in the face of plaintiff's proposed cure [gives] rise to a constructive consent to try the claims to the jury."). Because the defendants cannot point to anywhere in the record where they objected to the district court submitting the issue of back-pay damages to the

---

[4] Although we have never addressed the issue, defendants may be correct that federal courts should also treat as equitable damages for violations of pendent state law claims that are "virtually identical" to Title VII claims. *Saunders v. Madison Square Garden, L.P.*, 06 Civ. 589, slip op. at 3 (S.D.N.Y. Sept. 4, 2007) (Lynch, *J.*). Because the defendants consented to a jury trial on this aspect of damages, however, we need not resolve the issue here.

jury, they have constructively consented to the jury trying that issue and have waived any challenge to it.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.